UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WALTER RADLINGER, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 12-6862 |
| v. | : | |
| | | OPINION |
| CAMDEN COUNTY and CAMDEN COUNTY DEPARTMENT OF CORRECTIONS, | : | |
| Defendant. | : | |

This matter is before the Court on cross-motions for summary judgment on the sole remaining count of Plaintiff's Complaint. Upon agreement of the parties, only Count Five alleging violation of the Family Medical Leave Act ("FMLA") has survived discovery. The Court has considered the submissions of the parties pursuant to Fed. R. Civ. P. 78(b), and for the reasons set forth here, Defendant's motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

Background

Plaintiff Walter Radlinger has sued his former employer Defendant Camden County for wrongful termination in violation of the FMLA. Plaintiff was employed as a corrections officer at the Camden County Corrections Facility from June 24, 2000 until he was terminated on July 12, 2012.

In March of 2011, Eric Taylor, Warden of Camden County Correctional Facility, approved Plaintiff's request for intermittent leave during the period of March 10, 2011 to September 10, 2011. Walters Cert., Ex. F. On May 24, 2011, however, Plaintiff was notified that he had exhausted his entitlement to FMLA leave as he had taken a total of twelve weeks of leave in the previous twelve months. Id. Defendant advised Plaintiff,

therefore, that he would be subject to discipline for any future sick days taken, which would be characterized as absent without leave ("AWOL"). Id. Accordingly, Plaintiff's absences on May 25, 26, 27, 30, 31, and June 1 were characterized as AWOL and he was subject to discipline. Walters Cert., Ex. C. Plaintiff was served with a Notice of Disciplinary Action dated June 15, 2011, and the parties subsequently entered into a Settlement Agreement and Release whereby, in lieu of termination, Plaintiff agreed to accept a ninety-day staggered suspension and a one-year probationary period. Gray Cert., Ex. F; Walters Cert, Ex. B. The Agreement also provided, "If any abuse of sick leave policy, FMLA, or any other absenteeism and/or lateness policy violations occur the Employer will be seeking termination." Id., p. 2.

On March 16, 2012, Plaintiff submitted an application for FMLA leave from February 11, 2012 through February 22, 2012. Gray Cert., Ex. H; Walters Cert, Ex. E, N. The application was accompanied by a certification signed by Dr. Carl Vitola, who wrote that Plaintiff was unable to perform his job functions for the period indicated due to a kidney stone, but he was cleared to return to work at the time the application was completed. Id. On March 22, 2012, Plaintiff was notified that his FMLA leave request for February 11 through February 22, 2012 was approved. Gray Cert., Ex. G; Walters Cert, Ex. F. The approval letter was signed by Lt. John Vernon. Id. Plaintiff also used sick time on February 27, March 20, 21, 24, 25, and 31, for a total of 15 sick days in 2012, the maximum allowed. Id. See also Taylor Dep., Gray Cert., Ex. A, Walters Cert., Ex. M, p. 24-25. "[A]nything thereafter he would be absent without leave . . . [u]nless it was designated as FMLA." Taylor Dep., Gray Cert., Ex. A, Walters Cert., Ex. M, p. 25.

Plaintiff called out sick on June 4 and June 24, 2012, during his probationary period, and on July 8 and 9, 2012. Gray Cert., Ex. Y; Walters Cert., Ex. C. On July 12,

2

2012, at the direction of the Warden, Plaintiff was served by disciplinary officer Sgt. Earl W. O'Connor with a Preliminary Notice of Disciplinary Action (31-A) signed by Deputy Warden Fosler.  Gray Cert., Ex. I; Walters Cert, Ex. G, H; Gray Cert., Ex. C, Blackwell Dep., p. 17; Ex. T, Taylor Dep., p. 22; Ex. U, O'Connor Dep., p. 21-35.  The Notice indicated that Plaintiff was suspended with the possibility of termination effective July 11, 2012 for absences without leave on June 5, June 24, July 8, and July 9.  Id.  The document also noted that the majority of Plaintiff's sick time was "adjacent to approved time off creating patterns of abuse."  Id.

The following day, on July 13, 2012, Plaintiff submitted an application for intermittent FMLA leave signed by Dr. Carl Vitola.  Gray Cert., Ex. G; Walters Cert, Ex. J.  The doctor indicated on the form that Plaintiff had suffered from kidney stones since 2007, most recently from June 5 through July 9, 2012.  Id.  When symptomatic, Plaintiff was unable to perform his job functions, but was cleared to return to work with no restrictions on July 13, 2012 due to passage of third kidney stone.  Id.  Plaintiff maintains that he had not exhausted his entitlement to FMLA leave at that time, and therefore applied for FMLA leave to convert the alleged absences without leave into FMLA days, using available non-sick leave time.

The July 13, 2012 application was denied on August 23, 2012 by Lt. James Blackwell, Director of Human Resources.  Gray Cert., Ex. J; Walters Cert, Ex. L; Taylor Dep., Gray Cert., Ex. A, Walters Cert., Ex. M, p. 16.  The denial letter stated:

> On Thursday, July 12, 2012, you were served with a 31a and subsequently suspended pending removal due to abuse of sick time.  On Friday, July 13, 2012 you went to your treating physician, had a FMLA certification filled out and then hand delivered the FMLA application/certification to Deputy Warden Fosler outside of the facility that same morning.

> As you submitted the FMLA request in an untimely manner and after you were suspended pending removal, a review and subsequent processing of your request at this point and time would be moot, as the need for leave no longer exists; however a review of the FMLA paperwork you submitted reveals the following:
>
> Your FMLA application/certification was submitted (38) days after the first recorded absence (AWOL) on June 5, 2012, without previous indication of your need for leave or reason for the delay.
>
> As such, even if your request was not moot, your attempt to cover your absences as FMLA retroactive to June 5, 2012 would not have been approved.

Gray Cert., Ex. J; Walters Cert, Ex. L.

The record indicates that a disciplinary hearing was conducted on August 28, 2012 and resulted in a September 2, 2012 recommendation to the Warden that Plaintiff be terminated. Gray Cert., Ex. Y. An undated Final Notice of Disciplinary Action indicates that Plaintiff was terminated effective July 12, 2012. Walters Cert., Ex. I. While the September 2 recommendation acknowledged that retroactively granting FMLA leave was "a common Facility practice," (Gray Cert., Ex. Y), Plaintiff had run out of available sick time and "violated his own Settlement Agreement." (Id.) The hearing officer found:

> The Respondent was well aware of the FMLA procedures. Had he suffered a kidney stone event on or about June 5, 2012, which would require further FMLA leave, he should have made a timely FMLA application. This would especially be required in the light of his probationary status and the settlement agreement notice that **any** absentee or lateness violations would lead to the Facility seeking termination of employment. Radlinger's attempt to salvage the situation by submitting an application after his employment was terminated was a futile effort. It is noted that Respondent's argument that other leave time was available to apply to FMLA is rejected. General Order 007 makes clear that only paid sick time may be substituted or used during FMLA leave, so that the availability of other types of leave is irrelevant.

Gray Cert., Ex. Y.

<u>Summary Judgment Standard</u>

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party

5

must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### The Family and Medical Leave Act

Generally

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, ("FMLA") was enacted to provide leave for workers whose personal or medical circumstances require that they take time off from work in excess of what their employers are willing or able to provide. Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The Act is intended "to balance the demands of the workplace with the needs

of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following certain events: a serious medical condition; a family member's serious illness; the arrival of a new son or daughter; or certain exigencies arising out of a family member's service in the armed forces. 29 U.S.C. § 2612(a)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1).

Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); and to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b).

"To trigger the application of the FMLA, an employee must provide his employer with notice that leave is necessary." Johnson v. Thru Point, Inc., 160 Fed. Appx. 159, 162 (3d Cir. 2005) (citing 29 C.F.R. § 825.303 and holding that the plaintiff had not put his employer on notice of his need for health-related leave because he neither advised his employer of a medical condition nor provided the employer with an opportunity to discover it). To evoke the requirement for unpaid FMLA leave, however, an eligible employee need not specifically assert his rights under the Act, or even mention the Act itself. 29 C.F.R. § 825.208(a)(2). All that is required is that the employee state an FMLA qualified reason for the leave. Id.

"[T]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" Holpp v. Integrated Commc'ns Corp., Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J. December 20, 2005) (quoting Brohm v. JH Props., 149 F.3d 517, 523 (6th Cir. 1998)). Moreover, 29 C.F.R. § 825.302(c) requires an employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, based on information provided by the employee." Id. § 825.208(a). The designation generally must be made before the leave starts, but only in limited circumstances can leave be designated as FMLA-protected after it has ended, usually within two business days. Id. § 825.208(e). When the need for leave is unforeseeable, employees are obligated to notify their employer "as soon as practicable," 29 C.F.R. § 825.303(a), and "provide sufficient information for an employer to reasonably determine whether the FMLA may apply," 29 C.F.R. § 825.303(b).

Although employers may adopt or retain leave policies more generous than any policies that comply with the requirements under the FMLA, 29 U.S.C. § 2653, the "rights established by the Act may not be diminished by any employment benefit program or plan," 29 C.F.R. § 825.700.

Interference

"In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398,

8

401 (3d Cir. 2007). Thus, to survive summary judgment on his interference claim, Plaintiff must present evidence establishing that: (1) he was entitled to FMLA benefits; (2) Defendant violated 29 U.S.C. § 2615 by "interfering with, restraining, or denying [his] exercise of FMLA rights;" and (3) he was prejudiced by the interference. Sconfienza v. Verizon Pennsylvania Inc., 307 Fed. App'x 619, 621 (3d Cir. 2008) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

"[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). On the other hand, an employer is not required to suspend its termination proceedings just because the employee requests medical leave. See, e.g.. Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001). "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004).

Defendant argues that the July 2012 application for FMLA leave was denied because Plaintiff was no longer an employee of Camden County, having been suspended and then terminated for violating the Settlement Agreement and Release. Defendant points out that its FMLA policy, General Order 007, provides that in "emergent circumstances," an employee can give oral notice of the need for leave "but subsequently must (promptly) provide the department (H/R) with written notice." Walters Cert., Ex. P, p. 2. Further, the policy provides that "[i]t is the employee's responsibility to obtain and submit a fully completed Family and Medical Leave Application to the Warden within 15 days of receipt for 'unforeseeable' leave, to have those days designated as

9

'Family Leave.'" Id., p. 3. It was also acknowledged, however, that Defendant's practice was to accept FMLA applications from Plaintiff "anywhere from ten days to 48 days." Gray Cert., Ex. C, Blackwell Dep., p. 79.

The Court finds that Defendant had already begun termination proceedings against Plaintiff, and was not required to halt those proceedings because Plaintiff sought to retroactively convert the days he was AWOL to FMLA leave. There is no indication in the record that Defendant knew or should have known that the absences in question would qualify for FMLA leave. In addition, Plaintiff has provided no reason for waiting until after termination proceedings were initiated to apply for FMLA leave. Gray Cert., Ex. C, Blackwell Dep., p. 59, 79. Therefore, the Court cannot find that Plaintiff notified Defendant "as soon as practicable" with "sufficient information" of the need for FMLA leave to cover his absences in June or July of 2012. It follows that the claim for interference cannot stand, as Plaintiff has not established he had a right to FMLA benefits.

Accordingly, Plaintiff's motion for summary judgment on Count Five of the Complaint [29] is denied; Defendant's motion for summary judgment on Count Five of the Complaint [31] is granted. Plaintiff's motion to seal certain records [28] will be dismissed as moot.

Dated: October 15, 2014                    s/ Joseph H. Rodriguez
                                            JOSEPH H. RODRIGUEZ
                                            U.S.D.J.